# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LA'MONDRE MOORE,

Petitioner,

v.

WARDEN ROBERT MILLER,

Respondent.

Case No. 24-CV-4-JPS

**ORDER**

## 1.    INTRODUCTION

Petitioner La'Mondre Moore ("Petitioner"), who is currently incarcerated at Racine Correctional Institution,[1] filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. He seeks relief from his convictions and sentences for first degree child sex assault (sexual contact with a person under age 13) in violation of Wisconsin Statute § 948.02(1)(e); battery (with a domestic abuse modifier) in violation of Wisconsin Statutes §§ 940.19(1) and 968.075(1)(a); and intimidating a witness in violation of Wisconsin Statutes § 940.43(7). ECF No. 1 at 2.[2] In

---

[1]Petitioner notified the Court of a change in his place of confinement. ECF No. 26. Accordingly, the Court will update Respondent's name to the warden in charge of Petitioner's current place of confinement. FED. R. CIV. P. 25(d).

[2]*See State of Wisconsin v. Lamondre Moore*, No. 2013CF004753 (Milwaukee Cnty. Cir. Ct. 2013), *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2013CF004753&countyNo=40 &mode=details (the "2013 case") (cited to hereafter as "2013 Case Docket") and *State of Wisconsin v. Lamondre Moore*, No. 2014CF004475 (Milwaukee Cnty. Cir. Ct. 2014), *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2014CF004475&countyNo=40 &index=0&mode=details (the "2014 case") (cited to hereafter as "2014 Case Docket").

2015, Petitioner was convicted in Milwaukee County Circuit Court and was sentenced to (i) 30 years of imprisonment followed by 10 years of extended supervision with respect to the 2013 case and (ii) 5 years of imprisonment followed by 5 years of extended supervision with respect to the 2014 case, to run consecutive to his sentence in the 2013 case. 2013 Case Docket; 2014 Case Docket.

At screening, the Court determined that Petitioner was allowed to proceed on one of his seven asserted grounds for relief—the one relating to ineffective assistance of trial counsel—but required the petitioner to show cause why his remaining six claims regarding ineffective assistance of postconviction counsel should not be dismissed as procedurally defaulted. ECF No. 5 at 13. After a round of briefing on the matter, ECF Nos. 8, 12, 13, the Court determined that Petitioner's six grounds of ineffective assistance of postconviction counsel were procedurally defaulted and dismissed them with prejudice. ECF No. 17 at 11, 14. Merits briefing proceeded on Petitioner's claim of ineffective assistance of trial counsel, and volunteer counsel later appeared for Petitioner. *Id.*; ECF Nos. 18, 19. Respondent— now Warden Robert Miller ("Respondent")—answered the petition. ECF No. 22. Briefing is now complete on Petitioner's ineffective assistance of trial counsel claim. ECF Nos. 23, 24, 25. For the following reasons, the Court will deny Petitioner's remaining habeas claim relating to ineffective assistance of trial counsel, and accordingly will deny Petitioner's petition for writ of habeas corpus in full.

## 2. BACKGROUND[3]

At the time of the incidents that gave rise to Petitioner's conviction, Petitioner was in a relationship with R.B., who served as the primary caregiver for three-year-old M.J. *State v. Moore*, 927 N.W.2d 160, ¶ 2 (Wis. Ct. App. Feb. 7, 2019) (Table).

According to R.B.'s testimony at trial, early one morning, she awoke to hear M.J. "whine[ ] out." *Id.* at ¶ 3. When she went to investigate, she discovered Petitioner and M.J. together, both naked from the waist down. *Id*. R.B. took M.J. into another room to comfort her, but Petitioner followed "in a rage" and hit R.B. twice in the head. *Id*. R.B. then left her apartment to seek help from a neighbor. *Id*. Petitioner "chased R.B. down, dragged her back to her apartment, and 'choked' her." *Id*. R.B.'s neighbors came to her aid, enabling her to get away. *Id*. Neighbors also retrieved M.J. from R.B.'s apartment, and R.B. called the police. *Id*. M.J. told R.B. that "her daddy hurt her," referring to Petitioner. *Id*.

During the trial that ensued, Ms. Rodgers, one of R.B.'s neighbors, who was involved in the incident, testified, corroborating R.B.'s testimony. *Id.* at ¶ 4. Specifically, she testified

> that she heard [M.J.] cryin', and [R.B.] said she went into the room, and she said that [M.J.'s] underwears was off, and she thought she peed in the bed or somethin', and she said that she found her underwear behind the—the couch, and that was it.
>
> . . .

---

[3]Unless otherwise indicated, these facts are taken from the Wisconsin Court of Appeals' decision affirming Petitioner's judgments of conviction. *State v. Moore*, Nos. 2018AP253-CR and No. 2018AP254-CR, 927 N.W.2d 160 (Wis. Ct. App. Feb. 7, 2019) (Table).

> She said she saw [Petitioner] standin' in the chair or sittin' in the chair doin' somethin' and [M.J.] was standing and he had his shirt off or whatever. That's all I can remember.

*Id*. at ¶ 7.

The jury also heard evidence that a dried secretion swabbed from M.J. tested negative for semen but had a DNA profile consistent with Petitioner's DNA sample. *Id*. at ¶ 4. During the state's closing argument, "the prosecutor asserted that this secretion could have come from [Petitioner] 'spitting' on his penis to facilitate [Petitioner]'s sexual assault of M.J." *Id*. Specifically, the prosecutor stated:

> Secretion swabs. Now, I admit and it's frustrating and it's [a] little ang[ering], we don't know where exactly [on M.J.'s body] those secretion swabs came from, but we do know from our nurse that a black light is used when secretion swabs are found, right? There's secretion on the body somewhere.
>
> . . .
>
> I submit to you they came from[,] came when the defendant starts spitting. He starts spitting on his penis because it's not going in. It's not going into her vagina, it's not going into her rectum.

*Id.* at ¶ 13.

> After his conviction, Petitioner
>
> alleged that counsel was ineffective by failing to object to testimony by R.B.'s neighbor as containing hearsay statements by R.B. [Petitioner] also alleged that counsel was ineffective by failing to object to the prosecutor's assertion that [Petitioner] spit on his penis as unsupported by the evidence.

*Id.* at ¶ 5. This motion was denied by the circuit court without a hearing. *Id*.

Petitioner appealed to the Wisconsin Court of Appeals, arguing that (i) his trial counsel was ineffective for "failing to object to testimony by R.B.'s neighbor as containing hearsay statements by R.B.," *id.* at ¶ 7, and

(ii) his trial counsel was ineffective for "failing to object to the prosecutor's assertion, during rebuttal closing argument, that the non-semen secretion found on M.J. could have come from [Petitioner] spitting on his penis to facilitate the sexual assault of M.J.," *id.* at ¶ 11. The Wisconsin Court of Appeals affirmed. *Id.* at ¶ 16. Petitioner went on to petition the Wisconsin Supreme Court for review, which was denied on May 14, 2029. *State v. Moore*, 928 N.W.2d 790 (Wis. May 14, 2019) (Table). On January 2, 2024, Petitioner filed his § 2254 petition with this court. ECF No. 1.[4]

Additional factual background will be discussed as relevant in the analysis.

## 3.    LEGAL STANDARD

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *Brown v. Payton*, 544 U.S. 133, 141 (2005).

A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule or, in applying the proper legal rule, reached a different result as the Supreme Court would have on "materially indistinguishable" facts. *Payton*, 544 U.S. at 141 (citing

---

[4]As the Court addressed in its Screening Order, Petitioner's petition is timely due to various tolling periods. *See* ECF No. 5 at 6–8.

*Williams v. Taylor*, 529 U.S. 362, 405 (2000) and *Early v. Packer*, 537 U.S. 3, 8 (2002)). A state court's decision is an unreasonable application of established precedent when that state court applies Supreme Court precedent in "an objectively unreasonable manner." *Id*. (citing *Williams*, 529 U.S. at 405, and *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)).

Federal courts are "limited to a deferential review of the reasonableness, rather than the absolute correctness, of a state court decision." *Mosley v. Atchison*, 689 F.3d 838, 844 (7th Cir. 2012) (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *see also Searcy v. Jaimet*, 332 F.3d 1081, 1087 (7th Cir. 2003) (finding that AEDPA "significantly constrain[s] any federal court review of a state court conviction"). This standard is intentionally difficult to meet. *Harrington*, 562 U.S. at 102. "To satisfy this high bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Harrington*, 562 U.S. at 103). Importantly, the burden of proof in habeas cases rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing *Woodford*, 537 U.S. at 24). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)).

In habeas cases specifically alleging ineffective assistance of counsel, the well-established standard is the one set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that a petitioner demonstrate both constitutionally deficient performance by counsel and actual prejudice as a

result of the deficiency. *Williams v. Taylor*, 529 U.S. at 390–91 (citing *Strickland*, 466 U.S. 668). To demonstrate deficient performance, the petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. To demonstrate actual prejudice, the petitioner must show that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The combination of the general § 2254(d) standards and *Strickland* results in a heightened standard of review on a claim for ineffective assistance of counsel. *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (citing *Cullen*, 533 U.S. 170). Indeed, the federal court evaluating an ineffective assistance-based habeas petition must defer to both trial counsel's judgment *and* the decision of the state court, making the federal court's review "doubly deferential." *Cullen*, 563 U.S. at 189–90 (citations omitted). In effect, a reviewing court must essentially ask "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. This can also be framed as assessing whether the last state court to rule on the merits "[took] the [constitutional standard] seriously and produce[d] an answer within the range of defensible positions." *Mendiola v. Schomig*, 224 F.3d 589, 591 (7th Cir. 2000). However, if the last state court to rule on the merits did not address one of *Strickland*'s prongs at all, that prong is assessed de novo, rather than with the extreme deference just described. *Thomas v. Clements*, 789 F.3d 760, 766–67 (7th Cir. 2015) (citations omitted).

### 4.     ANALYSIS

Petitioner argues that his trial counsel was ineffective in two ways. He claims (1) ineffective assistance of counsel based on trial counsel's

failure to object to hearsay statements and (2) ineffective assistance of counsel based on trial counsel's failure to object to the government's "improper closing argument." ECF No. 23 at 6.

### 4.1 Hearsay-Based Claim

#### 4.1.1 Whether Federal Review of the Hearsay-Based Claim is Precluded

Before the Court can reach the substance of Petitioner's claims, the Court must address Respondent's argument that federal review of Plaintiff's hearsay-based claim is barred. ECF No. 24 at 8. Respondent points out that when the last state court to reach a merits decision has decided the appeal on state law grounds, federal habeas review is not available. *Id.* at 8–9. This is because errors of state law are not subject to habeas review. *Id.* at 8 (quoting *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) and citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). In effect, what this means for the Court's purposes is that where a state court has decided an underlying issue of state law demonstrably had no merit, counsel cannot have been deficient for failing to raise that issue. *Id.* at 9 (citing *Rogers v. Wells*, 96 F.4th 1006, 1012 (7th Cir. 2024)). Here, Respondent argues that the Wisconsin Court of Appeals unequivocally decided the statements at issue fell into the hearsay exception for excited utterances under Wisconsin Statute § 908.03(2). *Id.* Respondent argues that because the Court is bound by that determination, as a matter of law, Petitioner's counsel cannot have been deficient for failing to object. *Id.* at 10–11 (citing *Morgan v. Krenke*, 232 F.3d 562, 567 (7th Cir. 2000)).

Petitioner, in reply, argues that where a state law decision either is not entirely independent of federal law or is otherwise entwined with issues of federal law, federal habeas review is not precluded. ECF No. 25 at

6 (citing *Glossip v. Oklahoma*, 604 U.S. 226, 242 (2025)). In fact, Petitioner notes that there is a presumption of reviewability unless the state court "states 'clearly and expressly'" that it is deciding the case on purely state law grounds. *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991)). Here, Petitioner argues, there was no such plain statement indicating exclusive reliance on state law and, indeed, *Strickland*—a matter of federal law—was woven throughout the analysis. *Id.* at 7. Furthermore, Petitioner claims that he need not second-guess the Wisconsin court's evidentiary ruling to make his ineffective assistance claim; all that matters is that there was a state law argument available, and competent counsel should and would have pursued that theory. *Id.* at 9. He specifically states that, rather than finding that an evidentiary objection *would* have failed, the state appellate court used "somewhat equivocal language" and merely indicated that such an objection *could* have failed, so there was a colorable argument under state law that counsel failed to pursue. *Id*. (citing *Moore*, 927 N.W.2d at ¶ 8). Moreover, Petitioner argues that only the trial court can make hearsay determinations, so the state appellate court's view of the matter is not binding. *Id.* at 10.

As an initial matter, Petitioner's final point—that only a trial court can determine what is hearsay and therefore the Court should disregard the appellate court's finding on the matter—is without merit. A great many things are generally left to the discretion of a trial court, including, of course, determinations about whether a particular statement should be admitted under a hearsay exception. But a federal claim based on counsel's failure to take some action necessarily means that the trial court had no opportunity to act and therefore made no ruling. If the appellate court were not able to say how, as a matter of state law, the issue would have been

resolved, an ineffective assistance of counsel claim would *never* fail under the first prong of *Strickland*, because there would be no way to say counsel's performance was adequate. In other words, if the appeals court could not provide its own application of the law to the facts in the case where the trial court never got a chance to decide, there would *always* be a possibility that a claim could have succeeded and therefore trial counsel would never be adequate where he or she failed to object.

Moreover, this is simply inconsistent with how the Seventh Circuit has handled the matter. In *Bryant v. Brown*, the Seventh Circuit deferred to a state appellate court's determination that certain statements "would have been inadmissible hearsay," even though the trial court was never presented with the matter and therefore never ruled on it. 873 F.3d 988, 997 (7th Cir. 2017). Similarly, in *Kimbrough v. Neal*, the Seventh Circuit deferred to a state appellate court's determination that contesting a sentence "as a matter of state law . . . would have been futile," again notwithstanding the fact that the trial court never actually confronted that challenge. 941 F.3d 879, 881–82 (7th Cir. 2019). Indeed, the Seventh Circuit has explicitly countenanced a judicial entity other than the trial court judge determining the would-be admissibility of evidence, saying that courts will rarely "find ineffective assistance of counsel based upon a trial attorney's failure to make an objection that would have been overruled under the then-prevailing law." *Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001) (quoting *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999)); *see also Pinkins v. Buss*, 215 F. App'x 535, 541 (7th Cir. 2007) (deferring to appellate court's determination that an attorney's objection to certain evidence would have been overruled); *Hoglund v. Neal*, 959 F.3d 819, 829 (7th Cir. 2020) (deferring to appellate court's determination that "the trial court would have

overruled even consistent and thorough objections"); *Ruhl v. Hardy*, 743 F.3d 1083, 1098 (7th Cir. 2014) (declining to "overturn the Illinois *Appellate Court*'s determination that the statements were admissible under Illinois law" (emphasis added)).

Wisconsin courts operate the same way, allowing the Court of Appeals to take stances on matters not addressed by trial courts, including evidentiary matters. *See, e.g., State v. Hinz*, 360 N.W.2d 56, 60 (Wis. Ct. App. 1984) (rejecting state's contention that a blood alcohol chart is inadmissible hearsay even though "[t]he trial court did not fully address this issue."); *State v. Salter*, 346 N.W.2d 318, 324–25 (Wis. Ct. App. 1984) ("Although the trial court did not address the admissibility of Dr. Fosdal's testimony under this statute (nor was he requested to do so by the defense), it is clear that the evidence was not entitled *to automatic admissibility at the time it was offered*." (emphasis in original)). The Wisconsin Court of Appeals has gone so far as to differentiate between a trial court's decision to admit a statement—which is entitled to great deference—and an actual determination that "a statement is admissible under a hearsay exception, [which] is a question of law that we review *de novo*." *State v. Joyner*, 653 N.W.2d 290, ¶ 16 (citations omitted). Indeed, it has expressly held that where "an evidentiary issue requires construction or application of a statute to a set of facts, a question of law is presented," *Palisades Collection LLC v. Kalal*, 781 N.W.2d 503, ¶ 14 (Wis. Ct. App. 2010), and the appellate court will review that question of law de novo. *Deutsche Bank Nat. Tr. Co. v. Olson*, 875 N.W.2d 649, ¶ 20 (Wis. Ct. App. 2016).

So here, the Wisconsin appellate court was well entitled to make a judgment about a matter of state evidentiary law. To the extent it did so, that conclusion is unreviewable and the Court must operate consistently

with it. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." (citations omitted)); *Perruquet*, 390 F.3d at 511; *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016). That is, to the extent the appeals court really did say a hearsay objection was meritless under state law, the Court cannot contradict that. *Lopez v. Thurmer*, 594 F.3d 584, 587 (7th Cir. 2010) ("[W]e will not fault counsel as ineffective for failing to advance a position under state law that the state appellate court said was meritless." (citing *George v. Smith*, 586 F.3d 479, 483–84 (7th Cir. 2009))).

In this case, the Court finds that the appeals court did make such a determination. The Wisconsin appeals court was unequivocal: "We agree that the statements are reasonably viewed as excited utterances and, therefore, that counsel was not deficient in failing to object to R.B.'s neighbor's testimony." *Moore*, 927 N.W.2d at ¶ 8. The court did not say these statements *could be* "reasonably viewed as excited utterances." It said that deeming them excited utterances was the reasonable way to view them. Unless it distorts the natural and plain reading of this statement, the Court cannot find a way to Petitioner's conclusion that the appellate court saw the matter as "open to debate." ECF No. 25 at 11.[5] And insofar as "[a] federal

---

[5]The Court has concerns that the trial court judge would not actually have ruled the way the Wisconsin Court of Appeals indicated—that is, that the trial court may have found the statements inadmissible. Indeed, the trial court indicated as much. After excusing the jury for lunch, the trial court noted that, during the testimony at issue, "there has frequently been extensive hearsay that's been put into evidence and there hasn't been an objection by the defense." ECF No. 22-4 at 10. The trial court asked Petitioner's attorney, Daniel Mitchell, if he had been aware of the hearsay and if he had a reason for not objecting. *Id*.

But even if the Wisconsin Court of Appeals got the evidentiary ruling substantively wrong, "errors of state law in and of themselves are not cognizable on habeas review." *Perruquet*, 390 F.3d at 511; *see also Rogers*, 96 F.4th at 1012

court cannot disagree with a state court's resolution of an issue of state law," the Court is bound by that conclusion. *Zatecky*, 820 F.3d at 277 (citing *Bradshaw v. Richey*, 546 U.S. 74 (2005) and *Estelle*, 502 U.S. 62).

It does not follow, however, that all aspects of the Wisconsin Court of Appeals' decision-making are subject to this total deference. There is no doubt that the court couched its entire inquiry in the language and requirements of *Strickland*—namely, deficiency and prejudice. *See Moore*, 927 N.W.2d. at ¶ 6. Indeed, Petitioner's counsel is correct to note that the appellate court's "discussion of the hearsay exception has no independent relevance, but is instead interwoven with the federal *Strickland* analysis." ECF No. 25 at 7 (citations omitted). And where the last state court undertook a federal analysis, the standards of review described *supra* Section 3 would be implicated. So the Court, for purposes of addressing the instant hearsay-based habeas motion, will accept as binding the state appellate court's decision that a hearsay objection would have failed. Simultaneously, it will analyze whether *Strickland* means that failure to raise a meritless claim means counsel was ineffective. With that framing set, the Court will begin with the deficient performance prong of *Strickland*.

---

("Where the state court has ruled that trial counsel was not ineffective because a state law argument would have failed, that state law ruling is unassailable on habeas, even if it is couched as an ineffective assistance of counsel claim." (citing *Kimbrough*, 941 F.3d at 882). So the Court's hands would be tied. Moreover, the Wisconsin Court of Appeals had access to the trial court's concerns when it made its decision, as the state quoted them in its briefing to the appellate court. ECF No. 22-4 at 10. Yet the trial court's concerns did not sway the Wisconsin Court of Appeals' analysis.

### 4.1.2 Deficient Performance

Unfortunately for Petitioner, the law here is overwhelmingly clear. Quite simply, a state court is not unreasonable, under either § 2254 or *Strickland*, for concluding that counsel is not deficient for failing to raise what would have been a meritless claim.

The matter has been litigated time and time again. In *Lopez v. Thurmer*, the Seventh Circuit provided a helpful statement of the law, albeit in the context of counsel failing to request a particular jury instruction.

> [W]e will not fault counsel as ineffective for failing to advance a position under state law that the state appellate court said was meritless. . . . Because we leave undisturbed the state appellate court's holding that Lopez was not entitled to a felony-murder instruction, its additional ruling that counsel's performance was constitutionally adequate under *Strickland* was reasonable. It is not well outside the boundaries of permissible differences of opinion . . . to conclude that counsel's performance is constitutionally adequate when he fails to request an instruction that, as a matter of state law, the defendant is not entitled to in the first place.

594 F.3d at 587 (internal citations and quotation marks omitted). Other cases have repeatedly confirmed that, under *Strickland*, counsel is not deficient for failing to raise futile arguments. *Hough*, 272 F.3d at 898 (citing *Lucas*, 179 F.3d at 420); *see also Pinkins*, 215 F. App'x at 541 ("If evidence admitted without objection was admissible, then a defendant's argument fails both prongs of the *Strickland* test." (citing *Hough*, 272 F.3d at 898); *Hoglund*, 959 F.3d at 829; *Ruhl*, 743 F.3d at 1098; *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) (noting that counsel is not required to "press meritless arguments before a court" (citing *Kurina v. Thieret*, 853 F.2d 1409, 1417 (7th Cir. 1988)). Such is the case here.

Looking more directly to the standards of § 2254, the conclusion remains the same. To obtain habeas relief under § 2254, the petitioner must show either that the state court (i) did not apply the proper legal rule, (ii) applied the proper legal rule but reached the opposite result as the Supreme Court would have on "materially indistinguishable" facts, or (iii) applied Supreme Court precedent in "an objectively unreasonable manner." *Payton*, 544 U.S. at 141. As to point (i), the state appellate court, though not naming *Strickland* directly, correctly applied its rule, stating, "To show ineffective assistance, the defendant must demonstrate both that counsel performed deficiently and that counsel's deficient performance was prejudicial." *Moore*, 927 N.W.2d at ¶ 6 (citation omitted). As to point (ii), there is no Supreme Court case stating that counsel is required to raise a meritless argument, so the Court cannot conclude that the state court misapplied existing precedent with materially indistinguishable facts. To the contrary, the Supreme Court has stated: "Because the objection upon which his ineffective-assistance-of-counsel claim was premised was meritless, [the petitioner] could not demonstrate an error entitling him to relief." *Lafler v. Cooper*, 566 U.S. 156, 167 (2012) (citing *Lockhart v. Fretwell*, 506 U.S. 364 (1993)). And as to point (iii), there is no argument to be made that the state court applied Supreme Court precedent unreasonably. The state court's reasoning on *Strickland* prong one was clear, cogent, and unequivocal. It reproduced the challenged testimony, stated its position that the statements fell into the "excited utterance" exception to hearsay, and described in detail why it viewed that exception as applicable. *Moore*, 927 N.W.2d at ¶ 7–9. The state court then took the time to respond to counterarguments from Petitioner. *Id.* at ¶ 10. It concluded, as *Strickland* permits and, in fact, requires (as detailed above), that where the statements

are admissible under a hearsay exception, counsel cannot be faulted for failing to object to them. *Id.* at ¶ 8.

Far from being open to "fairminded disagreement," *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103), this matter is conclusively settled in Respondent's favor. Petitioner's claim fails to establish an entitlement to habeas, because under § 2254, the state court's finding that counsel is not deficient for failing to raise a futile objection reasonably applied *Strickland*.

The Court pauses to address a few specific arguments raised by Petitioner in the context of counsel's performance. First, Petitioner contends that R.B. was a witness fraught with credibility issues. ECF No. 23 at 13–14. As a result, the prosecution needed a witness like Ms. Rodgers to "shore up [R.B.'s] testimony." *Id* at 14. That may be true, but it is unclear how this relates to the deficiency prong of *Strickland*. It does not matter, for *Strickland* purposes, whether the state heavily relied on Ms. Rodgers as a witness. All that matters is whether counsel was deficient for failing to object to her statements, which in turn implicates the question of whether her statements were admissible. The admissibility question is the crux, not her centrality or lack thereof to the state's case. To the extent this goes to prejudice, the Court addresses that in the next section.

Petitioner also argues that trial counsel had no strategic reason for failing to object to the statements made by Ms. Rodgers. *Id.* at 15. In response to the trial court's questions whether he was aware of the hearsay being offered and if he had a reason for not objecting, Petitioner's attorney stated:

> I'm aware of it and I'm certainly versed in that. It is not consistent with our theory of defense, and our theory of

> defense is such that I don't believe the hearsay statements will be ultimately critical to the theory of defense so I don't have overwhelming concerns.
>
> . . .
>
> I note that there have been statements made about neighbors and other things that would certainly rise to that, but again I'm very aware of my theory of defense and I'm staying consistent with that and I don't have a great deal of concern with those exceptions being made at this time, Judge.

ECF No. 22-4 at 10. Petitioner interprets this to mean that "trial counsel had no strategic reason for not objecting to Ms. Rodgers's hearsay testimony; he simply didn't understand that it was prejudicial to his case." ECF No. 23 at 15; *see also* ECF No. 25 at 10. It is unclear what Petitioner expected trial counsel to say in that scenario. Should he have been expected to lay out his strategies in front of the prosecution, at the risk of them gaining an advantage with that knowledge? In the Court's eyes, it suffices that trial counsel described his decision to not object as being rooted in his theory of the case; this strikes the balance between giving the Court enough to assess that there was, in fact, strategy at play and not divulging so much as to give opposing counsel an unfair advantage in the case.

Finally, Petitioner quarrels with Respondent's citation to *Hinesly v. Knight*, 837 F.3d 721 (7th Cir. 2016), arguing that the case is inapposite, because in that case, trial counsel had given a specific strategic reason for not objecting to certain statements and, in any event, the statements were indisputably admissible. ECF No. 25 at 13. Here, by contrast, trial counsel did not articulate his strategy, and it was not clear (until the Wisconsin Court of Appeals' later ruling) that the statements were admissible. The Court is unconvinced. For one, for the reasons just discussed, counsel need not lay out every iota of its strategy. Instead, it is enough if counsel gives

an indication that there was *some* strategy underlying their decision—including a strategy to merely not object to those statements that do not go to the theory of the defense. Moreover, the Wisconsin Court of Appeals ruled that the statements were admissible. The Court has at its disposal an affirmative statement on the status of the statements at issue—this is leagues away from Petitioner's intimation that *if* counsel had objected, and *if* the prosecution had said nothing or not raised the excited utterance exception, and *if* the trial judge did not, upon hearing the actual objection, think of that exception on his own, the statements may have been admitted.

In any event, *Strickland* only "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington*, 562 U.S. at 110. So ultimately, it may not matter if Petitioner's trial counsel actually did have a particular strategy in mind. What matters is whether his actions were reasonable, and, given the state court's later finding that the statements were admissible, whether his failure to object *was* reasonable.

Moreover, even if the statements were objectionable, trial lawyers are not required to object to every piece of possibly objectionable evidence. *United States v. Shukri*, 207 F.3d 412, 419 (7th Cir. 2000) (counsel need not object to every arguable issue "just because he can"). This is especially so if counsel believes the evidence does not hurt their case. *Anderson v. United States*, 182 F.3d 921, at *3 (7th Cir. 1999) (Table) ("[A]ttorneys, of course, are not required to object to everything that goes on in a trial if they reasonably believe the matter is a 'no harm-no foul' situation.").

And ultimately, in this case, it appears that trial counsel did have a subjective strategic reason for not objecting. He said so in clear terms: the testimony of Ms. Rodgers was simply not important to the defense theory.

This is a plainly permissible reason to not object. *See Shukri*, 207 F.3d at 419 (holding it reasonable that trial counsel "chose not to object because the questions . . . were harmless and had little impact on the outcome of the trial."). The Court is not required to speculate that trial counsel said one thing to the trial court but meant another.

Petitioner cannot show that "*every* fairminded jurist would agree that *every* reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 594 U.S. 731, 740 (2021) (cleaned up and citation omitted). A reasonable trial lawyer may well have decided to focus on the same things that Petitioner continues to focus on in his briefing: R.B.'s unreliability, the lack of testimony from M.J., and the equivocal nature of the DNA evidence. If this was the focus, there was no reason to object to testimony from Ms. Rodgers, even if the testimony had plausibly been objectionable. And moreover, as already explained, trial counsel was reasonable for not objecting where the objection was meritless as a matter of law.

A few additional arguments merit discussion. First, Petitioner also argues against the state court's substantive decision that the statements by Ms. Rodgers fell into the excited utterances exception. ECF No. 23 at 16–18. The Court, for the reasons discussed *supra* Section 4.1.1, cannot and will not address these arguments. The state court's decision on a matter of state law is binding on this Court. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." (citations omitted)); *see also Huusko v. Jenkins*, 556 F.3d 633, 637 (7th Cir. 2009) ("[A] federal court cannot issue a writ of habeas corpus that rests on a belief that a state court has misunderstood or misapplied state law." (collecting cases)).

Second, Respondent argues that Ms. Rodgers' testimony was cumulative and therefore not crucial to the jury's finding of guilt, so trial counsel's failure to object to it had no effect. *See* ECF No. 24 at 27. Petitioner argues that the "cumulative" nature of Ms. Rodgers' testimony does not render it immaterial. ECF No. 25 at 13 (citing *Williams v. Washington*, 59 F.3d 673, 680 (7th Cir. 1995) and *Moffett v. Kolb*, 930 F.2d 1156, 1162 (7th Cir. 1991)). True enough, but Petitioner still does not confront what Ms. Rodgers' cumulative testimony added beyond what the jury gained from the cumulative testimony by two officers to whom R.B. also reported the substance of the assault. *See* ECF No. 22-4 at 9. In other words, how did Ms. Rodgers' testimony uniquely make a difference in the case? Those officers were equally disinterested recounters of information relayed to them by R.B. In what material way does Ms. Rodgers differ in corroborating R.B.'s testimony?

### 4.1.3 Prejudice

The Court need not address the prejudice prong of *Strickland*, as Petitioner has failed to show that the state court's findings of deficiency were at all unreasonable. *Crowell v. Sevier*, 77 F.4th 539, 544 (7th Cir. 2023) ("A court may address these prongs in either order and need not address both if the defendant makes an insufficient showing on one." (citing *Strickland*, 466 U.S. at 697)). However, for thoroughness' sake, the Court will address prejudice as well. Importantly, because the state appellate court decided the case on the deficiency prong and did not address the prejudice prong, the Court's review is de novo. *Thomas*, 789 F.3d at 766–67.[6]

---

[6]Respondent claims that Petitioner "made no argument whatsoever on the prejudice prong of *Strickland* in the Wisconsin courts." ECF No. 24 at 3. As a result,

As noted above, to establish prejudice, Petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 697. Petitioner argues that Ms. Rodgers' testimony had two prejudicial effects: it bolstered R.B.'s credibility and "meant that the jury would hear the story of the alleged sexual assault again, this time not from the lips of R.B., but from 'a very nice lady' with no 'stake in this game.'" ECF No. 23 at 21 (citing ECF No. 22-14 at 28, 38).

Petitioner argues that this case "boiled down in large part to credibility." *Id*. The DNA evidence, he contends, was not ironclad, so much of the case came down to whether jurors believed R.B.'s version of events or Petitioner's version of events—a "he-said, she-said" scenario. *Id*. at 21–22. Ms. Rodgers' testimony, therefore, was necessary to bolster R.B.'s

---

Respondent contends that Petitioner's current arguments that he was prejudiced by deficient performance "should not be considered." *Id*.

Respondent is incorrect. In his opening brief to the state appeals court, Petitioner said, for example:

> By not objecting to the hearsay statements during trial, the jury was allowed to hear, for the second time, the story of R.B. It bolsters her credibility, which is why it was prejudicial to [Petitioner]. The failure of trial counsel to object to the hearsay statements of Ms. Rodgers constitutes deficient performance and did prejudice him.

ECF No. 22-3 at 21. This is not the only point in the brief in which Petitioner discusses prejudice. *See also id.* at 25–26. The Court's finding that Petitioner did address prejudice in his brief to the Wisconsin Court of Appeals applies to both of his ineffective assistance claims. *See id.* at 21 ("Defense counsel failed to object to the prosecutor's argument and the result was that [an] extremely prejudicial argument not supported by the record was allowed to be presented to the jury. In this case, the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process . . . .").

credibility and, because she was a disinterested third party, actually did so. *Id.*

Respondent makes a few key points in response. First, Ms. Rodgers' testimony was cumulative and provided far less detail than R.B.'s testimony. ECF No. 24 at 27. Moreover, two officers testified to similar information as Ms. Rodgers, so it is unclear that her testimony added much to the jury's analysis. *Id.*

First of all, in the prejudice inquiry, the Court is "making a comparative inquiry about counsel's choices." *Shaw v. Wilson*, 721 F.3d 908, 918 (7th Cir. 2013). That means the Court compares what happened in the present case given counsel's decision not to object with what might have happened in the event that counsel did object. And in doing so, it is far from clear that the trial court would have sustained the objection. The Wisconsin Court of Appeals opined that the statements were excited utterances and therefore admissible. *Moore*, 927 N.W.2d at ¶ 8. The trial court may have proffered an initial impression that the statements were hearsay, but—assuming the prosecutor responded to the objections—the trial court may well have nonetheless admitted them.

But even if the trial court had sustained the objection, the Court does not believe Petitioner was actually prejudiced by the admission of Ms. Rodgers' testimony—that the testimony made any difference. For one, it is far from clear that this case turned on credibility. Indeed, the simple fact of Petitioner's DNA ending up inside the young victim, *Moore*, 927 N.W.2d at ¶ 4, could plausibly have been sufficient to yield a conviction. Moreover, even if the jury never heard Ms. Rodgers' testimony, they would have heard from two other disinterested parties—namely, police officers—to whom R.B. also reported the substance of the assault. ECF No. 22-4 at 9. Frankly,

it is unclear to the Court what Petitioner sees Ms. Rodgers' testimony as adding beyond that which was added by the police officers who testified. Does a third disinterested person to whom R.B. reported the assault make R.B.'s story substantially more credible? The Court does not believe so. For all of these reasons, the Court finds that Petitioner cannot show prejudice.

### 4.2 Closing Argument-Based Claim

Petitioner also argues that a portion of the prosecution's closing argument was improper. ECF No. 23 at 2. Specifically, Petitioner took issue with "the prosecutor's assertion, during rebuttal closing argument, that the non-semen secretion found on M.J. could have come from [Petitioner] spitting on his penis to facilitate the sexual assault of M.J." *Moore*, 927 N.W.2d at ¶ 11. He asserted that this was "not supported by any evidence." *Id.* As a result, Petitioner argues his trial counsel was ineffective in failing to object to this statement. ECF No. 23 at 2.

The Wisconsin Court of Appeals explained that—while argument that "goes beyond reasoning from the evidence and suggests that the jury should arrive at a verdict by considering factors other than the evidence" is improper—counsel is generally "'allowed latitude in closing argument.'" *Moore*, 927 N.W.2d at ¶ 12 (quoting *State v. Neuser*, 528 N.W.2d 49, 51 (Wis. Ct. App. 1995)). That court rejected Petitioner's argument on the basis of the *Strickland* deficiency prong, explaining:

> [Petitioner] effectively ignores that there was evidence that a non-semen secretion from [Petitioner] was found on M.J.'s body, and [Petitioner] points to no evidence showing that the secretion could not have been saliva. Further, the prosecutor's assertion was consistent with M.J.'s statement that [Petitioner] "hurt her." Finally, the context of the prosecutor's assertion, including his "I submit to you" prefatory remark, makes clear that the prosecutor was acknowledging a lack of

direct proof that [Petitioner] spit on his penis to facilitate the assault. Rather, the prosecutor was making the more limited claim that the "spitting" scenario was one plausible explanation for why a non-semen secretion from [Petitioner] was found on M.J.'s body.

*Id.* at ¶ 15.

As an initial matter, the Court must address whether Petitioner now attempts to widen the scope of his claims. In the state appellate court proceedings, Petitioner certainly took issue with counsel's failure to object to the prosecutor's comments about Petitioner hypothetically spitting on his penis. But Petitioner did not—at least in any clear way—object to the host of other statements by the prosecutor with which he now takes issue: comments about M.J. being on Petitioner's lap; comments about Petitioner's penis being out; comments about Petitioner trying to put his penis in M.J.'s vagina and rectum; comments about hypothetical words M.J. might have said; comments about the truthfulness of Petitioner, his trial attorney, and the state's witnesses; and comments about what the DNA expert did or did not testify to. *Compare* ECF No. 23 at 24–25 *with* ECF No. 22-3.

The Court cannot consider these arguments, as they were procedurally defaulted.

> To preserve a claim for federal habeas review, a state prisoner must fairly present the operative facts and legal principles controlling the claim through a full round of state court review. . . . This rule requires that the factual and legal substance of the claim remain essentially the same when the petitioner has exhausted his state court remedies and moved on to federal court. . . . With ineffective-assistance claims, we have held that a petitioner procedurally defaults individual claimed deficiencies when he does not fairly present them to the state courts, even if he presented an ineffective-assistance claim based on other alleged errors.

*Blackmon v. Williams*, 823 F.3d 1088, 1100 (7th Cir. 2016) (citations omitted). Here, Petitioner has attempted to revise his claim beyond what the Court can consider. Of course, a petitioner may "reformulate [his] claims so long as the substance of the claim remains the same." *Sweeney v. Carter*, 361 F.3d 327, 333 (7th Cir. 2004) (*Chambers v. McCaughtry*, 264 F.3d 732, 738 (7th Cir. 2001)). And in some sense, these claims are related—they all arise out of trial counsel's failure to object to different parts of the same closing argument. But that is where the connection ends. Each of these claims rests on different factual and legal grounds. Each implicates different evidence. When the claims are combined—as Petitioner asks the Court to do—they reflect a seriously different strength than did the single claim of prosecutorial wrongdoing put before the Wisconsin Court of Appeals. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001) ("[A] petitioner's reformulation of his claim should not place the claim in a significantly different posture by making the claim stronger or more substantial." (citing *Demarest v. Price*, 130 F.3d 922, 932 & 939 (10th Cir. 1997))).

"At bottom, the task of the habeas court in adjudicating any issue of fair presentment is assessing, in concrete, practical terms, whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *Verdin v. O'Leary*, 972 F.2d 1467, 1476 (7th Cir. 1992). The Court cannot say that happened here. The Wisconsin Court of Appeals had no idea Petitioner took constitutional issue with all these different parts of the state's closing argument. As a result, it only focused on the issue of prosecutor's suggestion that Petitioner may have spit on his penis. *See Moore*, 927 N.W.2d at ¶¶ 13–14. Indeed, revealing is the fact that Petitioner only put before the appeals court the portion of the closing argument addressing Petitioner spitting on his penis,

ECF No. 22-3 at 22, and only now puts a much more fulsome version of the closing argument before the Court.

Petitioner argues that the Court ought to consider the challenged statements in the context of the broader closing argument. ECF No. 25 at 14. In support of this assertion, he cites to *Bedford v. Collins*, 567 F.3d 225 (6th Cir. 2009) and *United States v. Radtke*, 799 F.2d 298 (7th Cir. 1986).

But these cases do not help Petitioner. Putting aside the fact that *Bedford* is a Sixth Circuit case, the court there was clear: considering whether a comment was isolated or part of an extensive pattern goes to *flagrancy*, not the existence of impropriety. *See Bedford*, 567 F.3d at 233 ("To prevail, [the petitioner] must show that the prosecutor's remarks were not just improper but that they were flagrant. . . . Flagrancy turns on content and context: [] whether the comment . . . was an isolated occurrence or part of an extensive pattern . . ." (citation and quotation marks omitted)). Whether a given comment is improper is decided on the basis of that comment alone.

*Radtke* is similarly unhelpful to Petitioner. There, the Court said that even if a comment is improper, there may not be grounds for finding an unfair trial if, in the context of the trial as a whole, the statement was not especially "inflammatory and prejudicial." 799 F.2d at 310–11 (quoting *United States v. Chu*, 779 F.2d 356, 370 (7th Cir. 1985)). This adds nothing to the Court's existing analysis. Impropriety is established first and separately. *Then* the question of an unfair trial involves broader considerations of context. So Petitioner's suggestion that impropriety is established by reference to other acts is incorrect.

For all these reasons, the Court will not address the additional claims that Petitioner now raises and will, instead, focus on his issue with trial counsel's failure to object to the portion of the state's closing argument

addressing Petitioner hypothetically spitting on his penis. Because the state court decided the issue on *Strickland* prong one grounds—that is, deficiency of performance—the Court will assess that using the highly deferential review provided for by *Strickland*.

### 4.2.1 Deficient Performance

As discussed in depth *supra* Section 3, in assessing a state court's handling of the deficient performance prong of *Strickland*, the Court essentially asks "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 89. This can also be framed as assessing whether the last state court to rule on the merits "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Taylor*, 448 F.3d at 948 (citation omitted).

With that standard in mind, it is clear that the Wisconsin Court of Appeals satisfied what is asked of it. In effect, the court's position was that the prosecutor's statements were not improper—that is, did not stray beyond the range of permissible commentary during closing arguments—because they reflected and were consistent with facts in evidence and merely gave "one plausible explanation" for how Petitioner's DNA was found on M.J. *Moore*, 927 N.W.2d at ¶ 12–15.

Petitioner devotes many pages to demonstrating the impropriety of the prosecutor's statements, but he does so in a way that the Court finds confusing. He cites *Darden v. Wainright*, 477 U.S. 168, 181 (1986), which provides the standard for assessing whether "a prosecutor's improper statements deprive a criminal defendant of his right to a fair trial." *Evans v. Jones*, 996 F.3d 766, 774–75 (7th Cir. 2021). As far as the Court is aware, Petitioner is challenging *his own lawyer's* conduct. He is not raising any

direct challenge to the fairness of his trial on the grounds of the prosecutor's impropriety, which is broadly speaking a cognizable claim in habeas. *See, e.g., Swofford v. Dobucki*, 137 F.3d 442, 444 (7th Cir. 1998) (directly challenging "the prosecutor's intentional mischaracterization of the facts in closing arguments" as "reversible prosecutorial misconduct"). Rather, two challenges based on ineffective assistance of counsel are the subject of the instant petition. *See* ECF No. 1 at 11 (asserting "ineffective assistance of trial counsel[] . . . Trial counsel also failed to object to statement[]s of prosecutor during closing argument . . . "). Certainly, for purposes of making his claim, Petitioner must show that the prosecutor's statements were improper (or at least arguably so), and for purposes of establishing prejudice, *Darden* provides helpful organizing principles for assessing whether statements were so egregious that they "infected the trial with unfairness," 477 U.S. at 181 (citation omitted), but it is unclear to the Court that Petitioner needs to establish wrongdoing of constitutional proportions by the prosecutor in order to establish that his own counsel was deficient.

Indeed, the Wisconsin Court of Appeals, because it was assessing an ineffective assistance of counsel claim, did not undertake the more fulsome analysis associated with establishing a constitutional violation by the prosecutor. Instead, that court simply assessed whether the arguments by the prosecutor were improper in the more basic sense. *Moore*, 927 N.W.2d at ¶¶ 13–15. The Court thinks this was the correct approach, given the nature of the claim that Petitioner put before the Wisconsin Court of Appeals—an ineffective assistance of counsel claim. So in this section, the Court will not engage with the *Darden*-style analysis raised by Petitioner. Instead, the Court will assess whether the prosecutor's statement extended beyond inferences the evidence could plausibly support, and, accordingly,

whether trial counsel should have recognized that and objected. *See Moore*, 927 N.W.2d at ¶ 11 ("We reject this argument and, therefore, also reject Moore's argument that counsel was deficient by failing to object to the prosecutor's assertion.").

The Wisconsin Court of Appeals' conclusion that the statements were proper was reasonable, if not outright correct. During closing argument, prosecutors may properly "argue reasonable inferences from the evidence the jury has seen and heard," but may not "infuse their closing arguments with facts that the court has not admitted into evidence." *United States v. Klebig*, 600 F.3d 700, 718 (7th Cir. 2009) (quoting *United States v. Waldemer*, 50 F.3d 1379, 1383 (7th Cir. 1995); *see also United States ex rel. Hawthorne v. Cowan*, 224 F. Supp. 2d 1178, 1187 (N.D. Ill. Sept. 23, 2002) ("[A] prosecutor is allowed wide latitude to comment on the evidence during his closing argument." (citing *United States ex rel. Brunt v. Cowan*, No. 00 C 5772, 2001 WL 521837, at *4 (N.D. Ill. May 16, 2001))). Whether a given inference is reasonable depends upon the particular facts of the case, most importantly whether the evidence bears "logical and proximate connection to the point the prosecutor wishes to prove." *Klebig*, 600 F.3d at 718 (quoting *Waldemer*, 50 F.3d at 1384).

Here, the prosecutor implied that Petitioner spat on his penis to facilitate a sexual assault. This was the prosecutor's explanation for how non-semen DNA ended up on M.J. As the Wisconsin Court of Appeals noted, the jury had access to several pieces of evidence that supported such an inference—the non-semen secretion found on M.J., the fact that the secretion was possibly saliva, and M.J.'s statement that Petitioner "hurt her." *Moore*, 927 N.W.2d at ¶ 15; ECF No. 22-12 at 84 (DNA expert testifying at trial that there was a "possibility" that the secretions on M.J. was "either

saliva or touch DNA"). All of this makes the inference the prosecutor put forth reasonable. At a minimum, it places the Wisconsin Court of Appeals' conclusion of propriety well within the realm of "fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Moreover, Petitioner ignores the fact that the prosecutor said, "I submit to you." *Moore*, 927 N.W.2d at ¶ 15. As the Court of Appeals noted, this prefatory remark clearly flags the statements to follow as the *prosecutor's explanation* for the facts in evidence. *Id*. This reinforces the reasonableness of the Wisconsin Court of Appeals' conclusion, because, as that court noted, the prosecutor was "acknowledging a lack of direct proof" for the statements that followed and couching them in terms of inferences. *Id.*

And for what it is worth, Petitioner's attorney, in his own closing argument, raised Petitioner's alternative explanation for how his DNA ended up on M.J.—namely, Petitioner's explanation that his DNA was transferred from his face to a washcloth and then to M.J. when he used that wash cloth to clean her. ECF No. 22-14 at 20–21, 26. The attorney sought to explain why Petitioner did not mention that explanation to detectives. *Id*. To the extent Petitioner's attorney was entitled to provide his own theory, consistent with the evidence, of how Petitioner's DNA could have ended up where it did, it would be illogical to preclude the prosecution from doing the same. Indeed, trial counsel recognized as much, stating that while he considered objecting to the statements as facts not in evidence, he ultimately decided against it because the prosecutor was "certainly within his rights to make an argument at closing about what he felt the evidence could and would have shown." ECF No. 22-16 at 24.

Petitioner's arguments to the contrary are unavailing. Petitioner rightly points out that "at some point," an inference "will be unreasonable enough that the suggestion of it cannot be justified as a fair comment on the evidence" and will become impermissible "speculation or surmise." ECF No. 25 at 11 (quoting *Evans*, 996 F.3d at 778 and *Bafia v. N. Ind. Pub. Serv. Co.*, 993 F.2d 1306, 1309 (7th Cir. 1993)). Petitioner argues that is what happened here. The Court disagrees. There was evidence of Petitioner's DNA being inside of M.J. That DNA came from somewhere on Petitioner, though it was demonstrably not semen. ECF No. 22-12 at 76–79. The DNA expert testified to the fact that "what we are left with is the possibility that it was either saliva or touch DNA." *Id.* at 84. It is unclear what Petitioner would believe the prosecution *was* entitled to say if they were not allowed to argue that saliva was consistent with the evidence, especially when competing inferences regarding the DNA formed the crux of the case.

Overall, because the prosecution's inference falls within the proper scope of closing argument, it was reasonable for the state appellate court to reject Petitioner's claim that his trial attorney was ineffective for failing to object to these remarks. *Lopez*, 594 F.3d at 587 ("[W]e will not fault counsel as ineffective for failing to advance a position under state law that the state appellate court said was meritless." (internal citations omitted)).

### 4.2.2   Prejudice

Once more, the Court need not assess prejudice at all, as the comments made by the prosecutor were not improper and therefore trial counsel was not ineffective for failing to object. But to be thorough, the Court opts to do so. As an initial matter, the Wisconsin Court of Appeals did not comment on prejudice, as it addressed the issue of prosecutor's closing arguments on deficiency grounds. Where the last state court to rule

on the merits did not address one of *Strickland*'s prongs at all, that prong is assessed de novo. *Thomas*, 789 F.3d 760, 766–67 (7th Cir. 2015).

Plaintiff argues the prosecutor's statements deprived Petitioner of a fair trial. ECF No. 23 at 29–31. Specifically, Petitioner points to the six *Darden* factors for assessing whether a defendant was deprived of a fair trial.[7] These factors are "(1) whether the prosecutor misstated evidence; (2) whether the remarks implicate specific rights of the accused; (3) whether the defense invited the comments; (4) the trial court's instructions; (5) the weight of the evidence against the defendant; and (6) the defendant's opportunity to rebut the improper remarks." *Evans*, 996 F.3d at 778–79 (citing *Darden*, 477 U.S. at 181 and *Howard v. Gramley*, 225 F.3d 784, 793 (7th Cir. 2000)). Petitioner argues that the net effect of these factors tips in Petitioner's favor, and accordingly that the Wisconsin Court of Appeals unreasonably applied *Strickland* by finding that trial counsel's failure to object to the prosecutor's comments did not prejudice Petitioner. *Id.* at 31–33.

More generally, to establish prejudice by trial counsel's deficient performance, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. But whether framed in these terms or in terms of a *Darden* analysis, the conclusion is the same—Petitioner was not prejudiced.

Beginning with the first *Darden* factor. Petitioner argues that the prosecutor's "fictional narrative—based on fantasy more than facts—

---

[7]*Darden* does not control the Court's analysis on Petitioner's ineffective assistance claim—*Strickland* does—but the Court has addressed Petitioner's *Darden* arguments for the sake of completeness.

constitutes a gross misstatement of the evidence." ECF No. 23 at 30. The Court disagrees. The prosecutor's comments did not misstate or manipulate the evidence; rather, they raised an explanation that would tie the evidence together that was itself consistent with the evidence. The prosecutor did not say there was direct proof of Petitioner spitting; he said, "I submit to you" that spit was the mechanism by which Petitioner's DNA ended up on M.J.

The second factor—whether the remarks implicate specific rights of the accused—does not apply here.

As to the third factor—whether the defense invited the comments—Petitioner implies that trial counsel did not invite these comments. But in some sense, he did. Not only did trial counsel raise the washcloth explanation during trial, but he specifically referenced it again during his closing. ECF No 22-14 at 25. As noted above, to the extent Petitioner's attorney was entitled to provide his own theory, consistent with the evidence, of how Petitioner's DNA could have ended up where it did, the prosecution was entitled to do the same.

The fourth factor—the trial court's instructions—also tilts against Petitioner. Just before closing arguments, the trial court directed, "[C]onsider carefully the closing arguments of the attorneys, but their arguments and conclusions and opinions are not evidence. Draw your own conclusions from the evidence and decide upon your verdict according to the evidence under the instructions given you by the Court . . . ." ECF No. 22-14 at 4. The trial court also instructed at the trial's start: "Remarks of the attorneys are not evidence. If the remarks suggested certain facts not in evidence, disregard the suggestion." ECF No. 22-13 at 84. Thus, "the jury was on notice that the arguments were nothing more than counsel's interpretation of the evidence." *Hough*, 272 F.3d at 904. And a jury is

presumed to follow instructions given to it. *Weeks v. Angelone*, 528 U.S. 225, 226 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

The fifth factor—the weight of the evidence against the defendant—has been characterized as "the most important." *Hough*, 272 F.3d at 903 (citing *Howard*, 225 F.3d at 793). And this one tilts strongly against Petitioner. R.B. testified that she woke up to the sound of her daughter crying and came downstairs to find M.J. naked from the waist down, alone in the room with Petitioner. ECF No. 22-11 at 101–03. R.B. testified that Petitioner was also naked from the waist down. *Id.* at 104. R.B. testified that M.J. told her that her "daddy," understood to refer to Petitioner, "hurt her." *Id.* at 112. R.B. told three separate, uninterested people about the assault—two police officers and one neighbor. ECF No. 22-10 at 145–147; ECF No. 22-11 at 58–62, 47–52. Perhaps most significantly, there was DNA consistent with Petitioner found not just *on* M.J., but *inside* her vagina and rectum. ECF No. 22-12 at 62–67 and 79–81. The DNA analyst testified that such DNA could only end up in those places if there was penetration. *Id.* at 78–79 and 80–82. The sample found was not tested for whether it was saliva, so it was possibly saliva, but the DNA analyst could not determine this one way or another. *Id.* at 83–84. Additionally, there was evidence that could be interpreted as injury to M.J.'s vagina, as testified to by Nurse Candi Humphreys. ECF No. 22-11 at 15–16. This is substantial evidence weighing against Petitioner.

The final factor—whether defendant had a chance to rebut the statement—does tilt in favor of Petitioner, as the challenged statements were made during the prosecutor's rebuttal argument.

But overall, four out of five relevant factors tilt against Petitioner, including the factor often designated as the most important. The Court simply cannot see how the *Darden* factors favor Petitioner.

And when the Court looks at prejudice squarely in *Strickland* terms—in terms of whether there was "a reasonable probability that," if counsel had objected, "the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694—the Court's conclusion is the same. Even assuming counsel had objected, the Wisconsin Court of Appeals ruled that the statements were proper, so there is every indication that the objection would have ultimately been overruled.

Petitioner's arguments to the contrary do not sway the Court, but the Court pauses to address them. Petitioner points out:

> If [Petitioner]'s DNA did not show up on the swabs because of penile penetration (since there were no injuries or semen) or because of digital penetration (since his fingers had been amputated), then at least one juror could reasonably have believed that it came from touch DNA from his flaking skin, as even the State's expert admitted was possible.

ECF No. 25 at 14 (citations omitted). It is unclear why this result was not possible in the world that actually happened. Petitioner's trial counsel made clear on cross examination of Nurse Humphreys that her findings would have been consistent with things other than injury, like poor hygiene. ECF No. 22-11 at 43–44. Petitioner's trial counsel made clear on cross examination of the DNA expert that no semen was found on the swabs taken from M.J. ECF No. 22-12 at 79. Petitioner's trial counsel made clear that Petitioner does not have fingers. *Id.* at 112. Petitioner's trial counsel specifically raised multiple times the possibility of the DNA coming from Petitioner's flaking skin and a shared washcloth. *Id.* at 80–82, 114; ECF

No. 22-14 at 25. The jury simply did not believe Petitioner's version of events. In other words, the jury had all of the information Petitioner now says would have been enough to give rise to reasonable doubt, and it did not give rise to reasonable doubt in the jury's mind. The prosecution—even with its closing argument—did nothing to prevent this information from reaching the jury. The jury was simply faced with competing inferences, and it picked the one it believed to be true beyond a reasonable doubt.

### 4.3 Cumulative Effect

Petitioner contends that even if the individual failures to object were not enough to justify granting habeas on their own, their combined effect can be enough to justify granting habeas. The cumulative effect analysis is helpfully described in *Alvarez v. Boyd*:

> Trial errors which in isolation are harmless might, when aggregated, alter the course of a trial so as to violate a petitioner's right to due process of law. . . . To prevent the synergistic effect of these errors from escaping review, courts attempt to determine whether the whole is greater than the sum of its parts. The cumulative effect analysis requires a petitioner to establish two elements: (1) at least two errors were committed in the course of the trial; (2) considered together, along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial.

225 F.3d 820, 824 (7th Cir. 2000) (citations omitted). Here, the Court cannot reach a cumulative error analysis, because Petitioner cannot show any errors in the first place. The Wisconsin Court of Appeals concluded—and this Court leaves undisturbed—that Ms. Rodgers' testimony fell into a hearsay exception and was thus admissible and the prosecutor's closing argument represented a fair inference from the evidence. There were no errors, so the Court cannot add up their effects.

### 4.4 Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires the Court to either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. Such a certificate should only be issued where the petitioner has made a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

Here, as explained in depth above, Petitioner's claims are without merit. The Court does not find any grounds to believe that reasonable jurists would debate the outcome of this petition or find reason to encourage Petitioner to proceed further. Accordingly, the Court declines to issue him a certificate of appealability.

### 5. ADDITIONAL MATTERS

Several of the documents submitted by the parties contain the full name of the child victim in this case, who remains a minor now. ECF Nos. 22-10, 22-11, 22-12, 22-13, 22-14, 22-16. Pursuant to Federal Rule of Civil Procedure 5.2, where a court filing contains "the name of an individual known to be a minor," the filings may include only the minor's initials. Respondent filed these documents without redacting M.J.'s name to initials, so the Court will direct the Clerk of Court to restrict them to case-participant only status until further order of the Court. In the future, Respondent should be sure to redact filings consistent with Rule 5.2 or to file such documents accompanied by a motion to restrict. *See* GEN. L.R. 79(d).

## 6. CONCLUSION

For the reasons discussed above, the state appellate court's decision was undeniably reasonable, and the Court sees no reason to disturb it. Petitioner's two arguments for ineffective assistance of trial counsel are without merit, so this ground for relief will be denied and the petition for writ of habeas corpus will be denied in its entirety.

Accordingly,

**IT IS ORDERED** that Petitioner La'Mondre Moore's ground of ineffective assistance of trial counsel be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Petitioner La'Mondre Moore's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 1, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of Court place ECF Nos. 22-10, 22-11, 22-12, 22-13, 22-14, and 22-16 under case participant-only restriction until further order of the Court;

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 18th day of March, 2026.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge